IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| **POLYLAST SYSTEMS, LLC**<br><br>**Plaintiff,**<br><br>v.<br><br>**HAYWARD BROS INC., LOUIE HAYWARD aka LOUIS HAYWARD, DEBORAH CORNELL aka DEBORAH HAYWARD, CAMELLIA BOUTIQUE, LLC, and ASHTIN BURKEY**<br><br>**Defendants.** | Civil Action No. 1:25-cv-00046<br><br>**JURY TRIAL DEMANDED** |

**POLYLAST SYSTEMS, LLC'S**
**COMPLAINT FOR PATENT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, BREACH OF CONTRACT, UNFAIR COMPETITION, FRAUD, TORTIOUS INTERFERENCE, CIVIL CONSPIRACY, AND OTHER CLAIMS**

Plaintiff Polylast Systems, LLC ("Polylast" or "Plaintiff"), by and through its undersigned attorneys, files this Complaint against Defendants Hayward Bros Inc. ("Hayward Bros"), Louie Hayward aka Louis Hayward ("Louie"), Deborah Cornell ("Deborah"), Camellia Boutique, LLC ("Camellia Boutique"), and Ashtin Burkey ("Ashtin", and together with Hayward Bros, Louie, Deborah, and Camellia Boutique, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. This action is brought by Polylast to address Hayward Bros' unlawful activities, including patent infringement under 35 U.S.C. § 271, misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, breach of contract, common law unfair competition, fraud, tortious interference with contractual and business relationships, civil conspiracy, violation of the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), unjust enrichment, conversion, breach of fiduciary duty, breach of the duty of good faith and fair dealing, declaratory judgment, accounting and violations under the Lanham Act.

## THE PARTIES

2. Polylast Systems, LLC is a limited liability company organized under the laws of Arizona, with its principal place of business located in Coleman, Texas. Polylast specializes in the development, manufacturing, and sale of advanced rubber flooring and

surfacing products, which are used in various applications, including equestrian facilities, veterinary clinics, gyms, marine environments, golf courses, residential flooring, and splash pads.

3. Hayward Bros Inc. is a corporation organized under the laws of California, with its principal place of business in Coleman, Texas. Despite being suspended by the California Secretary of State since 2019 for failing to comply with corporate filing requirements, failing to file as a foreign entity authorized to transact business with the Texas Secretary of State, and failing to apply for the required Texas Comptroller Taxpayer Number, Hayward Bros continues to operate its business and factory in Texas, engaging in the infringing and unlawful activities described herein. Hayward Bros Inc's address is 3250 Maezel Ln, Carlsbad, CA 92008.

4. Louie Hayward is an individual resident of the state of California and owner of Hayward Bros, Inc. Louie Hayward is an owner and principal of Hayward Bros Inc. He has directly participated in and orchestrated the infringing and unlawful activities alleged herein, including misappropriation of Polylast's proprietary information, the infringement of Polylast's patents, and the sale and marketing of products that incorporate Polylast's misappropriated proprietary technology and trade secrets.  Louie Hayward's address is 3250 Maezel Ln, Carlsbad, CA 92008.

5. Deborah Cornell is an individual resident of the state of California and owner of Hayward Bros, Inc. and Camellia Boutique, LLC. Deborah Cornell is an owner and principal of Hayward Bros Inc. and also owns Camellia Boutique, LLC. She has directly participated in and facilitated the infringing and unlawful activities alleged herein, including the use of Polylast's trade secrets for the benefit of Hayward Bros Inc. and Camellia Boutique, LLC.  Deborah Cornell's address is 3250 Maezel Ln, Carlsbad, CA 92008.

6. Camellia Boutique, LLC is a limited liability company organized under the laws of California, with its principal place of business at 301 N Highway 101, Solana Beach, CA 92075. Although Camellia Boutique, LLC itself did not engage in the infringing activities, funds from Camellia Boutique were co-mingled with those of Hayward Bros Inc. and used to support Defendants' operations, including the unlawful conduct described in this complaint. Camellia Boutique, LLC's address is 3250 Maezel Ln, Carlsbad, CA 92008.

7. Ashtin Burkey is an individual resident of the state of Texas and owner of Hayward Bros Inc. He has directly participated in and facilitated the infringing and unlawful activities alleged herein, including the use of Polylast's trade secrets for the benefit of Hayward Bros Inc. and Camellia Boutique, LLC. Ashtin Burkey's address is 110 E 1st Street, Coleman, TX 76834.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because it arises under the Patent Act, 35 U.S.C. § 1 et seq. The Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

9. Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), and 1400(b) because a substantial part of the events giving rise to Polylast's claims occurred in this District.

## FACTUAL BACKGROUND

### A. Polylast's Business and Intellectual Property

10. Since its founding in 2010, Polylast has been a leading innovator in the rubber flooring and surfacing industry. Polylast's products are known for their superior comfort, safety, durability, and antimicrobial features, achieved through the integration of patented technologies and proprietary formulations.

11. Polylast's products are widely used in diverse applications, including horse trailers, barns, veterinary clinics, dog kennels, gyms, boat decks, golf course bunkers, residential flooring, commercial facilities, swimming pool decking, and splash pads. Polylast's reputation for quality and innovation has made its products a preferred choice among industry professionals.

12. Polylast holds numerous U.S. patents that protect its proprietary technologies and innovations, including:

    a. US-10309070 (Exhibit A): Rubber flooring compositions with enhanced durability and safety features.

    b. US-9982143 (Exhibit B): Methods for manufacturing resilient rubber surfaces with antimicrobial properties.

    c. US-9499716 (Exhibit C): Safety features integrated into rubber flooring, including slip resistance.

    (collectively, the "Patents").

13. Beyond its patents, Polylast possesses valuable trade secrets, including proprietary formulas, specific manufacturing techniques, customer lists, sales strategies, and market analyses. These trade secrets provide Polylast with a competitive edge and are protected by strict confidentiality measures, including non-disclosure agreements and internal security protocols.

14. Polylast markets its products under the "Polylast" name, which serves as a common law trademark. The Polylast mark is widely recognized within the industry and is synonymous with high-quality, innovative rubber flooring solutions, contributing to substantial goodwill.

### B. Defendants' Interest in Polylast and the Non-Disclosure Agreement

15. In October 2023, Hayward Bros, Louie and Deb, representing Hayward Bros, approached Polylast expressing interest in investing in Polylast. Defendants represented themselves

as a credible and capable partner, intending to enhance Polylast's market presence and distribution capabilities.

16. Based on these representations, Polylast shared proprietary and confidential information with Hayward Bros, including details of its patented technologies, trade secrets, customer lists, proprietary formulas, and business strategies, under a Non-Disclosure Agreement ("NDA") signed on October 11, 2023. The NDA is attached hereto as Exhibit D.

17. The NDA explicitly prohibited Defendants from using Polylast's confidential information for any purpose other than evaluating the potential business transaction. It required Defendants to maintain the confidentiality of all proprietary information and mandated the return or destruction of such information if no transaction was consummated.

### C. Termination of Negotiations and Unauthorized Use of Polylast's Technology

18. Despite initial discussions, Polylast and Hayward Bros were unable to reach an agreement on investment terms. In early 2024, Polylast informed Defendants that it would not proceed with the proposed transaction and expected full compliance with the NDA's terms.

19. Contrary to its obligations under the NDA, Defendants used Polylast's proprietary information and patented technologies to manufacture, market, and sell rubber flooring products, including without limitation to Polylast Bunker Liner, under the Hayward Bros brand. These products were directly derived from Polylast's proprietary and innovative compositions and manufacturing processes, with only minor modifications intended to obscure the infringement.

20. Defendants marketed these infringing products as their own, intentionally concealing their origin from Polylast's proprietary technology. Defendants' deceptive marketing practices have caused confusion among customers and potential customers, leading them to believe that Defendants' products are the original Polylast products or superior to those offered by Polylast.

### D. Willful Infringement of Polylast's Patents

21. Defendants' unauthorized production, use, and sale of rubber flooring products infringe on multiple Polylast patents, including but not limited to the Patents.

22. Defendants' infringement is willful and deliberate. Despite being aware of Polylast's patents through the due diligence process and after receiving multiple cease and desist letters, Defendants have continued its infringing activities, demonstrating a flagrant disregard for Polylast's intellectual property rights. See Exhibits E and F for cease and desist letters.

23. Defendants have repeatedly contacted, marketed, and sold their infringing products to customers expressing interest in Polylast products or services.

24. Defendants' infringement has caused Polylast substantial harm, including lost sales, erosion of market share, and damage to Polylast's reputation for quality and innovation. The ongoing infringement threatens Polylast's market position and undermines the value of its patented technologies.

### E. Misappropriation of Trade Secrets and Breach of Confidentiality

25. In addition to infringing Polylast's patents, Defendants' actions constitute misappropriation of Polylast's trade secrets, including proprietary formulas, manufacturing techniques, and business strategies. Defendants acquired these trade secrets under the NDA but used them for their own commercial gain, directly violating the NDA and the Texas Uniform Trade Secrets Act (TUTSA).

26. Defendants' misappropriation of trade secrets was willful and malicious, undertaken with full knowledge that such use was unauthorized and in violation of Polylast's rights. The misappropriation has resulted in significant financial loss, harm to Polylast's competitive position, and reputational damage.

### F. Fraudulent Misrepresentation

27. Throughout the due diligence process, Defendants made fraudulent representations to Polylast, falsely indicating its interest in a legitimate business transaction. In reality, Defendants intended to exploit Polylast's proprietary information for its own benefit without providing compensation.

28. Defendants have repeatedly contacted, marketed, and sold their infringing products with the "Polylast" name on it.

29. Defendants have been marketing and selling inferior and non-Polylast products under the Polylast name to Polylast customers and distributors.

30. These actions have led to confusion in the marketplace and have caused Polylast to incur significant expenses for warranty claims on non-Polylast products.

31. By using the Polylast name and reputation, Defendants have deceived customers into believing they were purchasing genuine Polylast products, undermining Polylast's goodwill and brand integrity.

### G. Comingling of Funds and Alter Ego Allegations

32. Louie, Deborah, and Ashtin, as principals of Hayward Bros, used funds, lines of credit, bank accounts, and/or credit or debit cards from Camellia Boutique, a company owned by Deborah Cornell, to finance the operations of Hayward Bros, including the manufacturing, marketing, producing, and selling of infringing products that incorporate Polylast's patented technology and trade secrets.

33. Louie, Deborah, and Ashtin further used a square payment account owned by Camellia Boutique to collect payments from customers on behalf of Hayward Bros.

34. This co-mingling of funds demonstrates a disregard for the separate legal status of Hayward Bros and Camellia Boutique, using the Boutique's assets to support the infringing activities of Hayward Bros. The co-mingling of funds between the two entities was intended to shield Louie, Deborah, and Ashtin from personal liability while conducting unlawful activities.

35. As a result of the co-mingling of funds and lack of corporate formalities, the separate personalities of Hayward Bros Inc. and Camellia Boutique, LLC no longer exist and treating them as separate entities would result in injustice.

36. Hayward Bros Inc. has failed to maintain its good standing in its state of organization (see Exhibit H). The company was suspended by the California Secretary of State in 2019 for failing to comply with corporate filing requirements. Further, at no point in time did Hayward Bros Inc. ever file as a foreign entity authorized to transact business with the Texas Secretary of State, nor did it apply for or obtain the required Texas Comptroller Taxpayer Number.

37. Despite those failures, Hayward Bros Inc continues its unauthorized operations.

38. Given the deliberate misuse of corporate structures to evade responsibility, Louie, Deborah, and Ashtin should be held personally liable for the infringing actions and other unlawful conduct facilitated through Hayward Bros and Camellia Boutique.

## PATENT INFRINGEMENT COUNTS

### COUNT I: PATENT INFRINGEMENT (35 U.S.C. § 271) - PATENT NO. US-10309070

39. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

40. Polylast is the owner of U.S. Patent No. US-10309070, which covers specific methods and compositions for rubber flooring products that enhance durability, safety, and antimicrobial properties.

41. Defendants have infringed, and continue to infringe, one or more claims of U.S. Patent No. US-10309070 by making, using, selling, offering for sale, and/or importing rubber flooring products that embody the patented methods and compositions without Polylast's authorization.

42. Defendants' infringement includes unauthorized replication of Polylast's patented formulas, use of proprietary manufacturing techniques, and marketing of the resulting products as its own, all without license or permission from Polylast.

43. Defendants' infringement is willful, knowing, and intentional, as it was aware of Polylast's patents through the due diligence process and continued its infringing activities despite being notified of the infringement through cease and desist letters.

44. As a result of Defendants' infringement, Polylast has suffered damages, including lost profits, lost market share, and irreparable harm to its reputation. Polylast seeks enhanced damages under 35 U.S.C. § 284, attorneys' fees under 35 U.S.C. § 285, and injunctive relief to prevent further infringement.

### COUNT II: PATENT INFRINGEMENT (35 U.S.C. § 271) - PATENT NO. US-9982143

45. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

46. Polylast is the owner of U.S. Patent No. US-9982143, which protects innovations in the design and composition of rubber surfaces that enhance resilience and antimicrobial effectiveness.

47. Defendants have infringed, and continue to infringe, one or more claims of U.S. Patent No. US-9982143 by manufacturing, using, selling, offering for sale, and/or importing rubber flooring products that embody the patented design and composition without Polylast's authorization.

48. Despite Defendants' awareness of Polylast's patent rights, it continued to produce and market infringing products, demonstrating willful disregard for Polylast's intellectual property.

49. Defendants' infringement has caused Polylast to suffer substantial financial losses, loss of competitive edge, and damage to its reputation. Polylast seeks enhanced damages, injunctive relief, and attorneys' fees.

### COUNT III: PATENT INFRINGEMENT (35 U.S.C. § 271) - PATENT NO. US-9499716

50. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

51. Polylast is the owner of U.S. Patent No. US-9499716, which covers safety features in rubber flooring materials, including slip resistance and durability under heavy use.

52. Defendants have infringed, and continue to infringe, one or more claims of U.S. Patent No. US-9499716 by producing, using, selling, offering for sale, and/or importing rubber flooring products that incorporate the patented safety features without Polylast's authorization.

53. Defendants' continued infringement has caused Polylast significant harm, including lost revenue, erosion of market share, and reputational damage. Polylast seeks damages, injunctive relief, and enhanced damages due to the willful nature of the infringement.

## TRADE SECRET AND CONTRACTUAL COUNTS

### COUNT IV: BREACH OF CONTRACT (NON-DISCLOSURE AGREEMENT)

54. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55. The NDA executed between Polylast and Hayward Bros is a valid and enforceable contract that explicitly prohibits the use of Polylast's confidential and proprietary information for any purpose other than evaluating a potential business transaction.

56. Defendants breached the NDA by using Polylast's proprietary information, including patented formulas and trade secrets, to manufacture, market, and sell rubber flooring products under its own brand. These actions were taken without Polylast's consent or authorization.

57. Defendants' breach of the NDA has caused significant harm to Polylast, including loss of business opportunities, erosion of market share, and reputational damage. Polylast has also suffered financial losses due to the unauthorized use of its proprietary technology.

58. Polylast seeks damages for breach of contract, including lost profits, consequential damages, and injunctive relief to prevent further unauthorized use of its confidential information.

## COUNT V: MISAPPROPRIATION OF TRADE SECRETS (TEXAS UNIFORM TRADE SECRETS ACT)

59. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 58 as if fully set forth herein.

60. Polylast's proprietary formulas, manufacturing techniques, and customer information constitute trade secrets under the Texas Uniform Trade Secrets Act (TUTSA). These trade secrets provide a competitive advantage and have been developed through significant investment and effort.

61. Defendants misappropriated Polylast's trade secrets by using them without authorization to manufacture, market, and sell rubber flooring products. Defendants acquired this information during the due diligence process under the protection of the NDA but used it for their own commercial gain.

62. Defendants' actions were willful and malicious, undertaken with the knowledge that such use was unauthorized and in violation of Polylast's rights. Defendants' misappropriation of trade secrets has caused substantial harm to Polylast.

63. Polylast seeks damages for misappropriation of trade secrets, including actual damages, exemplary damages, attorneys' fees, and injunctive relief to prevent further misuse of its trade secrets.

## COUNT VI: MISAPPROPRIATION OF TRADE SECRETS – ALTERATION AND USE OF PROPRIETARY FORMULAS (TEXAS UNIFORM TRADE SECRETS ACT)

64. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

65. Polylast's proprietary formulas and related trade secrets constitute valuable intellectual property, which Polylast has taken measures to protect, including through the execution of Non-Disclosure Agreements (NDAs) and other confidentiality protocols.

66. Defendants misappropriated Polylast's trade secrets by using them as a basis to create altered formulas. Despite any modifications, these formulas are substantially derived from Polylast's proprietary information and trade secrets, obtained during the due diligence period under false pretenses.

67. The use of altered formulas that derive from Polylast's trade secrets for manufacturing, marketing, and selling rubber flooring products constitutes a continuing misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (TUTSA).

68. As a result of Defendants' misappropriation and misuse of Polylast's proprietary information, Polylast has suffered damages, including lost profits, harm to its competitive position, and reputational damage.

69. Polylast seeks damages for misappropriation of trade secrets related to the altered formulas, including actual damages, exemplary damages for willful and malicious conduct, attorneys' fees, and injunctive relief to prevent further misappropriation.

## COUNT VII: BREACH OF CONTRACT – USE OF CONFIDENTIAL INFORMATION TO DEVELOP ALTERED FORMULAS

70. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

71. The Non-Disclosure Agreement (NDA) executed between Polylast and Hayward Bros expressly prohibited the use of Polylast's confidential and proprietary information for any purpose other than evaluating a potential business transaction.

72. Defendants breached the NDA by using Polylast's confidential information to develop altered formulas for rubber flooring products, which it subsequently used to manufacture, market, and sell its own products.

73. This unauthorized use of Polylast's proprietary information to create altered formulas constitutes a material breach of the NDA, causing significant harm to Polylast, including financial loss, competitive harm, and damage to its reputation.

74. Polylast seeks damages for breach of contract, including lost profits, consequential damages, and injunctive relief to prevent further unauthorized use of its confidential information.

## OTHER BUSINESS TORTS AND CLAIMS

### COUNT VIII: COMMON LAW UNFAIR COMPETITION

75. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 74 as if fully set forth herein.

76. Polylast uses the "Polylast" name and mark as a common law trademark to market its high-quality rubber flooring products. The "Polylast" mark is widely recognized in the industry and associated with innovation and quality.

77. Defendants have engaged in unfair competition by using the Polylast name and proprietary information to market its own products, creating confusion and misleading consumers as to the origin and quality of the products.

78. Defendants' conduct has caused harm to Polylast's reputation, goodwill, and business relationships, resulting in financial losses and damage to Polylast's brand.

79. Polylast seeks damages for unfair competition, including compensatory damages, punitive damages, and injunctive relief to prevent further deceptive practices.

### COUNT IX: FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING (LANHAM ACT, 15 U.S.C. § 1125)

80. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 79 as if fully set forth herein.

81. Defendants, by altering Polylast's proprietary formulas and marketing its products as new and original, has engaged in false designation of origin and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a).

82. These acts are likely to cause confusion, mistake, or deception among consumers and the public as to the source, sponsorship, affiliation, or approval of Defendants' products, falsely suggesting that such products are original innovations of Hayward Bros when they are derived from Polylast's proprietary information.

83. Defendants' conduct has resulted in damage to Polylast's business reputation, goodwill, and loss of sales, as consumers are misled into believing they are purchasing a product not associated with Polylast.

84. Polylast seeks damages for false designation of origin and false advertising, including actual damages, disgorgement of Defendants' profits, corrective advertising costs, and injunctive relief to prevent further violations.

### COUNT X: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

85. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

86. Polylast has established business relationships with customers and potential customers who rely on Polylast's reputation for quality and innovation.

87. Defendants knowingly interfered with these relationships by marketing and selling infringing products as their own, misleading customers, and causing them to purchase from Hayward Bros instead of Polylast.

88. Defendants' intentional interference has caused Polylast to lose customers, sales, and market share, resulting in significant financial and reputational harm.

89. Polylast seeks damages for tortious interference with business relations, including compensatory damages, punitive damages, and injunctive relief.

### COUNT XI: FRAUD AND FRAUDULENT MISREPRESENTATION

90. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 89 as if fully set forth herein.

91. Hayward Bros, through its principals, made material misrepresentations to Polylast during the due diligence process, including false representations of its intent to enter into a legitimate business transaction.

92. These representations were knowingly false and made with the intent to induce Polylast to disclose proprietary information, which Defendants planned to use for its own benefit.

93. Polylast reasonably relied on these false representations, leading to the disclosure of its trade secrets and confidential information to Defendants.

94. As a direct and proximate result of Defendants' fraudulent conduct, Polylast has suffered damages, including loss of proprietary information, lost profits, and harm to its business reputation.

95. Polylast seeks damages for fraud and fraudulent misrepresentation, including compensatory damages, punitive damages, and injunctive relief.

### COUNT XII: CIVIL CONSPIRACY

96. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 95 as if fully set forth herein.

97. Defendants, individually and through its principals, employees, and agents, engaged in a civil conspiracy to commit the unlawful acts described herein, including patent infringement, misappropriation of trade secrets, breach of contract, and fraud.

98. The conspiracy involved coordinated actions to unlawfully exploit Polylast's intellectual property, deceive Polylast's customers, and gain an unfair competitive advantage.

99. As a result of the civil conspiracy, Polylast has suffered damages, including economic loss, reputational harm, and loss of business opportunities.

100. Polylast seeks damages for civil conspiracy, including compensatory damages, punitive damages, and injunctive relief.

### COUNT XIII: VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT (DTPA)

101. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 100 as if fully set forth herein.

102. The Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), Texas Business & Commerce Code § 17.41 et seq., prohibits false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty.

103. Defendants have engaged in deceptive trade practices by falsely representing the origin, quality, and ownership of rubber flooring products that were derived from Polylast's proprietary information and patented technologies. Hayward Bros marketed and sold these products under its own brand, misleading consumers into believing that they were purchasing original and innovative products created by Hayward Bros.

104. Defendants' actions also included the use of misleading advertising and promotional materials, suggesting that its products were endorsed or authorized by Polylast, when in fact, they were not. This conduct has led to confusion among customers and has damaged Polylast's reputation and market position.

105. Defendants further engaged in deceptive practices by exploiting the trust of Polylast, misrepresenting its intent to enter into a legitimate business transaction, and obtaining access to Polylast's confidential information under false pretenses.

106. Defendants' conduct constitutes knowing and intentional violations of the DTPA, entitling Polylast to statutory damages, treble damages for each knowing violation, and recovery of attorneys' fees and costs.

107. As a direct and proximate result of Defendants' deceptive trade practices, Polylast has suffered damages, including financial losses, harm to its reputation, and loss of market share.

108. Polylast seeks all available remedies under the DTPA, including actual damages, treble damages, attorneys' fees, costs of suit, and injunctive relief to prevent further violations.

### COUNT XIV: UNJUST ENRICHMENT

109. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 108 as if fully set forth herein.

110. Defendants have unjustly enriched themselves by using Polylast's proprietary information, patented technologies, and trade secrets to develop, manufacture, and sell rubber flooring products without compensating Polylast.

111. By exploiting Polylast's innovations and misappropriating its confidential information, Defendants have gained an unfair economic benefit at the expense of Polylast, who has incurred substantial costs in research, development, and marketing.

112. Defendants' retention of profits from the sale of infringing and misappropriated products constitutes unjust enrichment, as these profits were obtained through wrongful conduct, including breach of contract, misappropriation of trade secrets, and patent infringement.

113. As a result of Defendants' unjust enrichment, Polylast has suffered damages, including lost profits, competitive harm, and loss of market share.

114. Polylast seeks restitution in the amount of the profits earned by Defendants through its unjust enrichment, as well as any other relief deemed just and equitable by the Court.

## COUNT XV: CONVERSION

115. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 114 as if fully set forth herein.

116. Polylast is the rightful owner of proprietary information, including trade secrets, patented technology, and confidential business information, which have significant economic value.

117. Defendants, without authorization or consent, has intentionally and unlawfully taken possession of and used Polylast's proprietary information to manufacture, market, and sell rubber flooring products.

118. By using Polylast's property for its own benefit, Defendants have exercised dominion and control over Polylast's intellectual property, effectively converting it for its own use and profit.

119. Defendants' conduct constitutes conversion, as it has deprived Polylast of its exclusive rights to its proprietary information and caused harm to Polylast's business and economic interests.

120. Polylast seeks damages for conversion, including the value of the converted property, lost profits, and any other relief deemed appropriate by the Court.

## COUNT XVI: BREACH OF FIDUCIARY DUTY

121. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 120 as if fully set forth herein.

122. By entering into negotiations for a potential business transaction and executing the Non-Disclosure Agreement (NDA), Defendants assumed a fiduciary duty to act in good faith and in the best interests of Polylast.

123. Defendants breached its fiduciary duty by misusing Polylast's confidential information, violating the terms of the NDA, and acting in its own self-interest to the detriment of Polylast.

124. Defendants' actions, including the unauthorized use of Polylast's trade secrets and patented technology, constitute a willful and intentional breach of fiduciary duty.

125. As a result of Defendants' breach of fiduciary duty, Polylast has suffered significant harm, including loss of competitive advantage, financial losses, and reputational damage.

126. Polylast seeks damages for breach of fiduciary duty, including compensatory and punitive damages, as well as any other relief deemed just and appropriate by the Court.

## COUNT XVII: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

127. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 126 as if fully set forth herein.

128. The Non-Disclosure Agreement (NDA) and subsequent dealings between Polylast and Hayward Bros created an obligation of good faith and fair dealing, requiring all parties to act honestly and fairly in the performance of their contractual obligations.

129. Defendants breached this duty by misrepresenting its intentions, misusing Polylast's confidential information, and engaging in conduct that undermined Polylast's business interests.

130. By failing to act in good faith and engaging in unfair competition, Defendants has breached its duty of good faith and fair dealing, causing harm to Polylast.

131. As a result of Defendants' breach, Polylast has suffered financial losses, reputational harm, and loss of market opportunities.

132. Polylast seeks damages for breach of the duty of good faith and fair dealing, including compensatory damages and injunctive relief to prevent further breaches.

## COUNT XVIII: ACCOUNTING

133. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 132 as if fully set forth herein.

134. Defendants, through its unlawful actions, including patent infringement, misappropriation of trade secrets, breach of contract, unfair competition, and fraudulent misrepresentation, has generated substantial revenues and profits from the sale of rubber flooring products derived from Polylast's proprietary technology.

135. As a result of Defendants' theft of Polylast's clients and unauthorized use of Polylast's patented formulas and trade secrets, Polylast has suffered financial losses and damage to its business operations.

136. Polylast lacks sufficient information to ascertain the exact amount of revenues and profits earned by Defendants from these unlawful activities, as the financial records detailing these transactions are in the exclusive possession and control of Defendants.

137. An accounting is necessary to determine the full extent of Defendants' profits and financial gains derived from its wrongful conduct, including but not limited to:

- Sales of infringing products that incorporate Polylast's patented technology.
- Revenues from customers who were diverted from Polylast to Hayward Bros due to false and misleading representations.
- Any other financial benefits obtained by Defendants through its use of Polylast's confidential and proprietary information.

138. Polylast seeks an order from the Court compelling Defendants to provide a complete and accurate accounting of all revenues, profits, and financial benefits derived from its unlawful activities, as well as any other relief deemed just and appropriate by the Court.

**COUNT XIX: DECLARATORY JUDGMENT (DECLARATORY RELIEF)**

139. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 138 as if fully set forth herein.

140. An actual controversy exists between Polylast and Defendants regarding the infringement of Polylast's patents, the misappropriation of trade secrets, and the validity of Polylast's intellectual property rights.

141. Polylast seeks a declaratory judgment from the Court affirming that:

- Defendants have infringed on Polylast's patents.

- Defendants have misappropriated Polylast's trade secrets.

- Defendants' actions constitute unfair competition and deceptive trade practices.

142. A declaratory judgment is necessary to clarify the rights and obligations of the parties, resolve the controversy, and provide Polylast with protection against future infringement and misappropriation.

143.   Polylast seeks a declaratory judgment affirming its rights as outlined above and any other declaratory relief deemed appropriate by the Court.

## COUNT XX: PATENT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS (ALL PATENTS)

144.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 143 as if fully set forth herein.

145.   Even if Defendants made alterations to Polylast's patented formulas, those alterations are insubstantial and the resulting products perform substantially the same function, in substantially the same way, to achieve substantially the same result as the inventions claimed in Polylast's patents, including but not limited to U.S. Patent Nos. US-10309070, US-9982143, US-9499716, and others identified herein.

146.   Defendants' products that incorporate these altered formulas are still covered under the scope of Polylast's patents under the Doctrine of Equivalents, thereby infringing on Polylast's patent rights.

147.   As a direct and proximate result of Defendants' infringement under the Doctrine of Equivalents, Polylast has suffered damages, including lost sales, market erosion, and reputational damage.

148.   Polylast seeks damages for infringement under the Doctrine of Equivalents, including compensatory damages, enhanced damages for willful infringement, attorneys' fees, and injunctive relief to prevent further infringement.

## COUNT XXI: PIERCING THE CORPORATE VEIL

149.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 148 as if fully set forth herein.

150.   Defendants Louie, Deborah, and Ashtin, as owners and principals of Hayward Bros and Camellia Boutique, have used these entities to perpetrate fraud and injustice, including the infringement of Polylast's patents, misappropriation of trade secrets, and unfair competition.

151.   Defendants have co-mingled the funds of Hayward Bros and Camellia Boutique, using proceeds from Camellia Boutique to fund the infringing activities of Hayward Bros. This co-mingling of funds and lack of corporate formalities demonstrate that Hayward Bros and Camellia Boutique were used as mere instrumentalities to carry out illegal and fraudulent conduct.

152.   Defendants' actions show a disregard for the separate legal existence of the corporate entities, using the companies to shield themselves from personal liability while engaging in wrongful acts. This behavior constitutes grounds for piercing the corporate veil under Texas law.

153. Treating Hayward Bros and Camellia Boutique as separate entities would result in injustice and enable Defendants Louie and Deborah to evade responsibility for their misconduct.

154. Plaintiff seeks an order from the Court piercing the corporate veil of Hayward Bros and Camellia Boutique, and holding Louie and Deborah personally liable for all damages and relief awarded to Polylast.

### COUNT XXII: THEFT UNDER THE TEXAS THEFT LIABILITY ACT (TTLA)

155. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 154 as if fully set forth herein.

156. Defendants unlawfully appropriated over $100,000 worth of Plaintiff's products from Plaintiff's factory, without consent and with the intent to deprive Plaintiff of its property, in violation of Section 31.03 of the Texas Penal Code. As of the date of this filing, a police report has been filed with the Coleman Police Department, but a copy of which is not yet available (Case Number 240-00589).

157. The stolen products include crumb rubber, chemicals, colorant, supplies, shelves, equipment, and proprietary rubber flooring goods/products manufactured using Plaintiff's patented technologies and trade secrets, which are critical to Plaintiff's business operations and market standing. See Exhibit G for a list of wrongfully taken property known as of the date of this filing.

158. Defendants' conduct constitutes theft as defined by the Texas Theft Liability Act (Texas Civil Practice & Remedies Code § 134.001 et seq.), which provides a civil remedy for theft of property.

159. As a direct and proximate result of Defendants' theft, Plaintiff has suffered substantial financial losses, including the value of the stolen products, lost profits, and damage to its business reputation.

160. Pursuant to the Texas Theft Liability Act, Plaintiff is entitled to recover:

    i. Actual damages in an amount to be determined at trial, including the value of the stolen products and lost profits;

    ii. Exemplary damages due to the willful and malicious nature of Defendants' conduct;

    iii. Court costs and reasonable attorney's fees; and

    iv. Pre- and post-judgment interest as allowed by law.

161. Plaintiff further seeks injunctive relief to prevent Defendants from unlawfully appropriating any additional products or property belonging to Plaintiff.

## COUNT XXIII: FRAUDULENT PASSING OFF

162. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 161 as if fully set forth herein.

163. Defendants have unlawfully produced, marketed, sold, and distributed non-Polylast products under the Polylast name to customers and distributors of Polylast.

164. By using the Polylast name and reputation, Defendants have knowingly deceived customers into believing they were purchasing genuine Polylast products, when in fact, they were purchasing inferior, non-Polylast products.

165. As a direct and proximate result of Defendants' fraudulent passing off, Polylast has incurred substantial costs, including expenses for warranty claims made by customers for non-Polylast products sold by Defendants as Polylast products.

166. Defendants' actions have caused confusion among customers, harmed Polylast's reputation and goodwill, and undermined Polylast's standing in the marketplace.

167. Defendants' conduct constitutes fraudulent passing off under the common law and violates the Lanham Act, 15 U.S.C. § 1125(a), and Texas law.

168. Polylast seeks compensatory damages, including costs associated with warranty claims, lost profits, corrective advertising expenses, and reputational harm. Polylast further seeks punitive damages for Defendants' intentional, willful, and malicious conduct, as well as injunctive relief to prevent further misuse of the Polylast name and brand.

## JURY TRIAL DEMAND

Pursuant to the Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Polylast Systems, LLC respectfully prays for judgment in its favor and against Defendants Hayward Bros Inc., Louie Hayward aka Louis Hayward, Deborah Cornell aka Deborah Hayward, Camellia Boutique LLC, and Ashtin Burkey, and requests that this Court grant the following relief:

1. A preliminary and permanent injunction enjoining Defendants from continuing to infringe on Polylast's patents, misappropriate Polylast's trade secrets, engage in unfair competition, violate the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), selling products under the Polylast name without authorization, unlawfully appropriating Polylast's property, and using or disclosing Polylast's confidential information.

2. An order requiring Defendants to return all of Polylast's proprietary information, including trade secrets, formulas, and confidential business information, and to account for all profits derived from its unauthorized use.

3. An order requiring Defendants to return all of Polylast's property in their possession.

4. An accounting of all revenues, profits, and financial benefits derived by Defendants from their infringement of Polylast's patents, misappropriation of trade secrets, fraudulent passing off of non-Polylast products as genuine Polylast products, and other unlawful activities.

5. An order piercing the corporate veil of Hayward Bros Inc. and Camellia Boutique, LLC, and holding Louie Hayward aka Louis Hayward, Deborah Cornell, and Ashtin Burkey personally – and jointly and severally – liable for all damages awarded to Polylast Systems, LLC.

6. Compensatory damages in an amount to be proven at trial, including but not limited to the value of stolen property under the TTLA, costs incurred for warranty claims on non-Polylast products sold under the Polylast name, lost profits, loss of market share, and damages resulting from patent infringement, misappropriation of trade secrets, and wrongful acts, and damages to Polylast's reputation and goodwill.

7. Exemplary damages for willful and malicious patent infringement pursuant to 35 U.S.C. § 284, willful and malicious misappropriation of trade secrets, theft under TTLA, fraud, and fraudulent passing off.

8. Treble damages and statutory damages for violations of the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA).

9. Punitive damages for fraud, civil conspiracy, breach of fiduciary duty, and unjust enrichment.

10. Restitution of profits obtained through unjust enrichment, fraudulent passing off, and theft of property.

11. An award of attorney's fees and costs incurred in this action pursuant to applicable statutes, including the TTLA.

12. Declaratory judgment affirming Polylast's rights and declaring Defendants' actions unlawful.

13. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

MEHAFFY WEBER, P.C.

By: _____
    M. C. CARRINGTON, Of Counsel
    State Bar No. 03880800
    mccarrington@mehaffyweber.com
    MICHELE Y. SMITH
    State Bar No. 00785296
    MicheleSmith@mehaffyweber.com
    WILLIAM THORNE
    State Bar No. 24102569
    williamthorne@mehaffyweber.com
    2615 Calder St., Suite 800
    Post Office Box 16
    Beaumont, TX 77704-0016
    Telephone: 409/835-5011
    Fax: 409/835-5177

**COUNSEL FOR PLAINTIFF, POLYLAST SYSTEMS, LLC**